Amey G. DYKEMA, as Personal Representative of the Estate of David Bruce Dykema, Plaintiff,

v.

William A. KING, M.D., Pendleton Medical Clinic, Foy D. Connell, M.D., Carolina Emergency Physicians, P.C., Terry Gemas, M.D., Cynthia Pearman, M.D., The Greenville Hospital System and Companion HealthCare Corporation, Defendants.

Civil Action No. 8:97–256–13.

United States District Court, D. South Carolina, Anderson Division.

March 28, 1997.

Michael Parham, Greenville, SC, for plaintiff.

Ashby Winton Davis, Donnan, Morton and Davis, P.A., Steven Albert Snyder, Donnan, Morton, Davis & Snyder, Greenville, SC, for William A. King, M.D., Pendleton Medical Clinic.

George Dewey Oxner, Jr., Greenville, SC, for Foy D. Connell, M.D., Carolina Emergency Physicians, P.C., Cindy Pearman, M.D., Greenville Hospital.

V. Clark Price, Love, Thornton, Arnold & Thomason, Greenville, SC, for Terry Gemas, M.D.

Frank H. Gibbes, III, Stephanie H. Burton, Gibbes, Gallivan, White & Boyd, P.A., Greenville, SC, for Companion HealthCare Corp.

## ORDER

GEORGE ROSS ANDERSON, Jr., District Judge.

The Plaintiff, Amey G. Dykema, in her capacity as Personal Representative of the estate of her deceased husband, David Bruce Dykema, instituted this wrongful death medical malpractice claim in state court pursuant to § 15–51–10, S.C. *Ann.* (1976), more commonly called the Wrongful Death Act. In her original Complaint, Plaintiff alleged several specifications of negligence as to various health-care providers responsible for the diagnosis and treatment of her husband. Subsequently, on December 30, 1996, Plaintiff amended her state court Complaint to add Companion HealthCare Corporation (herein referred to as "Companion") as a Defendant. Companion is a health-maintenance organization ("HMO") authorized to conduct business in South Carolina.

In her amended complaint, Plaintiff alleged Companion to be jointly and severally liable to her based upon Companion's alleged vicarious liability under South Carolina law. Plaintiff further made allegations of direct negligence as to Companion in the hiring, supervision and credentialing of certain of the defendant health-care providers named in her original complaint. Thereafter, Companion filed its notice of removal characterizing Plaintiffs action against Companion as a suit to recover benefits under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1) and, therefore, within the original jurisdiction of the district court pursuant to 28 U.S.C. § 1331. Companion alleged Plaintiff's Complaint to be removable pursuant to 28 U.S.C. § 1441(a) and (b). Companion asserted Plaintiff's claims to be preempted by ERISA and any remedy to which Plaintiff might be entitled, according to Companion, falls exclusively within the civil enforcement remedies of ERISA.

Companion argues the decedent obtained medical care as a benefit from a benefit plan governed by ERISA and, that removal is proper under the "complete preemption" exception to the "well-pleaded complaint rule". *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Plaintiff timely filed her motion to remand pursuant to 28 U.S.C. § 1447(c), (d) arguing her claims are not to recover plan benefits due under the terms of the plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan as those phrases are used in § 502(a)(1)(B) of ERISA. 29 U.S.C. § 1132(a)(1)(B). Therefore, Plaintiff argues removal of her medical malpractice wrongful death claim from state court was improper as *Metropolitan Life's* "complete preemption" exception is inapplicable.

## STATEMENT OF FACTS

Plaintiff is the widow of David Bruce Dykema and the duly appointed personal representative of her husband's estate which is situated in Oconee County, South Carolina. The Defendant, William A. King, MD, is a medical doctor who acted as family practitioner for Plaintiff's deceased. Dr. King was a partner at Pendleton Medical Clinic when rendering medical services to Plaintiff's deceased.

Foy D. Connell, MD, another defendant, was a medical resident engaged in training and the practice of medicine at the Greenville

Memorial Hospital campus of the Greenville Hospital System. At the time Dr. Connell rendered treatment and care to Plaintiff's deceased, he was alleged to have been acting both individually and as servant of the defendant Carolina Emergency Physicians, P.C., a professional corporation which provides emergency room coverage to the defendant Greenville Hospital System. Dr. Connell was also alleged to be a servant of and acting under the control or right of control of both the Defendant Greenville Hospital System and the Defendant Companion.

Terry Gemas, MD was a third-year medical student at the Greenville Hospital System on the date he rendered medical treatment and care to Plaintiff's deceased. Dr. Gemas allegedly was under the supervision of the Defendant Cindy Pearman, MD, also a medical doctor employed by the Greenville Hospital System at the times complained of by Plaintiff. Both Dr. Pearman and Dr. Gemas were alleged to be servants and agents of the Greenville Hospital System and Companion.

Finally, Companion is alleged to have been a corporate health-maintenance organization ("HMO") organized and existing under the law of the State of South Carolina and charged with the administration of the medical benefits portion of a managed health-care program of which Plaintiffs deceased was a member.

Companion is a health-maintenance organization authorized to conduct business in this State by the South Carolina Department of Insurance. Companion provides *administrative* services to self-funded employee welfare benefit plans. General Electric Corporation established the GE Life, Disability, and Medical Plan which provides certain benefits, *including* health benefits, to employees of GE and its affiliates throughout the country. GE plan participants may choose between two different medical benefit programs, GE Health Care Preferred or GE Medical Benefits. The GE Medical Benefits program is an indemnity program. Plan participants must satisfy certain deductibles and co-payments and benefits are paid at differing percentages depending upon the nature of the treatment rendered.

Under the GE Health Care Preferred Plan, of which Plaintiff's deceased was a member, participants choose a primary-care physician from an approved list of network providers who not only provide treatment but also perform other functions such as making recommendations concerning referrals to specialists.

On January 1, 1994, approximately one month prior to the date of the alleged malpractice, Companion entered into a Preferred Medical Plan agreement with GE under which Companion agreed to provide certain *administrative services* to the GE Health Care Preferred Plan. Companion established a provider network and a list of providers from which participants could choose a primary-care physician. In establishing this network, Companion required each provider comply with a credentialing procedure and also provided certain review services. Companion did not fund any of the benefits provided to plan participants.

In January, 1994, Mr. Dykema, as an employee of General Electric, opted to participate in the GE Health Care Preferred Plan and chose as a primary-care physician the Center for Family Medicine of the Greenville Hospital System. The Center employs a group of physicians, many of whom are enrolled in a training program within the family medicine residency program of the Greenville Hospital System. In this instance the defendants Gemas, Connell and Pearman each had some affiliation with the Center for Family Medicine.

In her amended complaint, Plaintiff alleged her husband developed certain medical problems which caused him to seek the treatment and care of his family physician, Dr. King, in December, 1994. Treatment by Dr. King continued through January, 1994. Nevertheless, after the adoption by Mr. Dykema of the GE Health Care Preferred Plan he visited the Center for Family Medicine owned and operated by the Defendant, Greenville Hospital System, on February 3, 1994 for evaluation, examination, diagnosis, treatment and care. At this time, Mr. Dykema was seen, examined and treated by the Defendant Gemas, then a third-year medical student who was allegedly under the supervi-

sion of the Defendant Pearman. After his examination, Mr. Dykema was sent home.

Mr. Dykema returned to the emergency room of the Greenville Hospital System on February 5, 1994 when his symptoms worsened. At this time, he was seen by the Defendant Connell, a medical resident employed within the Center for Family Medicine of the Greenville Hospital System. Mr. Dykema was again sent home after examination. The following day Plaintiff's condition continued to worsen and ultimately he died from the alleged delay in diagnosis of a pulmonary embolism.

Plaintiff claims Companion negligently selected and credentialed the Center for Family Medicine the Greenville Hospital System, Gemas, Pearman and Connell. Plaintiff additionally alleged Companion could be held vicariously liable for the alleged negligent acts of the Center for Family Medicine which is owned by the Greenville Hospital System, as well as the individual physicians and medical student.

## ANALYSIS

Companion removed this case to federal court pursuant to 28 U.S.C. § 1441 alleging the district court had original jurisdiction over the claim because the claim arose under the Constitution, treaties or laws of the United States. § 1441(b); 28 U.S.C. § 1331. To determine whether a claim "arises under" federal law, any analysis must begin with the "well-pleaded complaint rule". See *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

■ Under the well-pleaded complaint rule, a cause of action "arises under" federal law and removal is proper, only if a federal question is presented on the face of Plaintiff's properly pleaded complaint. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–12, 103 S.Ct. 2841, 2846–48, 77 L.Ed.2d 420 (1983). The defense of preemption ordinarily is insufficient justification to permit removal to federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398, 107 S.Ct. 2425, 2432–33, 96 L.Ed.2d 318 (1987). A federal defense to a plaintiff's

state law cause of action does not generally appear on the face of the well-pleaded complaint and, therefore, is usually insufficient to warrant removal to federal court. *Gully v. First Nat'l Bank*, 299 U.S. 109, 115–18, 57 S.Ct. 96, 98–100, 81 L.Ed. 70 (1936).

■ Companion removed the case the district court pursuant to the *Metropolitan Life* "complete preemption" exception to the well-pleaded complaint rule. *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Companion alleges the preemptive force of ERISA is so powerful as to displace entirely any state law cause of action and particularly Plaintiff's state law wrongful death medical malpractice claims. Plaintiff alleges her state court medical malpractice claims alleging both direct and vicarious liability for professional negligence do not "relate to" an ERISA plan within the meaning of applicable case and statutory law. The district court agrees.

■ A federal statute preempts state action in fields of traditional state regulation only if the clear and manifest intent of Congress in passing the federal statute was "to occupy the field to the exclusion of the States." *Allis–Chalmers Corp., v. Lueck*, 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985). While Congress has expressed its intent to occupy the field of employee benefit plans to the exclusion of the States, ERISA preempts state laws *only* insofar as they relate to "an employee benefit plan". See *FMC Corp. v. Holliday*, 498 U.S. 52, 57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). A state law "relates to" an employee benefit plan within the meaning of 29 U.S.C., § 1144(a) if it has a "connection with or reference to" such a plan. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ ERISA's preemption clause does not encompass all state law claims. Those state actions which affect employee benefit plans in "too tenuous, remote or peripheral a minor" do not relate to the plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). In order to properly ascertain whether a state law triggers preemption under ERISA, it is

necessary to look to the objectives of the ERISA statute as a guide to the scope of state law Congress understood would survive. *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 655–56, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995). The basic thrust of the preemption clause of ERISA was to avoid a multiplicity of regulation in order to permit a nationally uniform administration of employee benefit plans. *Id.* at 655–57, 115 S.Ct. at 1677–78.

The Fourth Circuit Court of Appeals has not addressed the "complete preemption" exception as it applies to a complaint alleging state law claims of direct and vicarious liability against an HMO charged with the administrative responsibility of delivering healthcare services to plan participants under an employee benefit program. Nevertheless, several district courts have considered the matter. In *Prihoda v. Shpritz*, 914 F.Supp. 113, (D.C.Md.1996) the United States District Court for the District of Maryland declined removal and remanded *Prihoda's* claim to state court under similar facts. Prihoda, personal representative of the estate of Maria B. Leisher, filed suit in the circuit court for Baltimore City alleging the physician defendants failed to diagnose a tumor on Leisher's left kidney permitting cancer to metastasize to Leisher's left lung. Prihoda also named HMO defendants including Prudential Health Care Plan, Inc. Prudential removed the case to the district court pursuant to 28 U.S.C. § 1441 contending Prihoda's claims against them arose under ERISA. Furthermore, the HMO defendants filed a motion to dismiss, or in the alternative, for summary judgment arguing the claims to be preempted by § 514 of ERISA, 29 U.S.C. § 1144(a). Prihoda opposed the motions arguing her claim of vicarious liability against the HMO was not preempted and sought remand to state court on the ground that removal was improper under the "well-pleaded complaint rule". The district court agreed. In analyzing the issue under the "well-pleaded complaint rule", the district court took note of the complete preemption exception of *Metropolitan Life*. Nevertheless, the court found the doctrine of complete preemption to be inapplicable. Recognizing

the Fourth Circuit Court of Appeals had not determined whether ERISA completely preempts a claim, the district court accepted the reasoning of the Third, Seventh and Tenth Circuits which have decided that such a claim is governed by the well-pleaded complaint rule. The claim, therefore, was not removable under the complete preemption principles established in *Metropolitan Life*.

A similar result has been reported in *Santitoro v. Evans*, 935 F.Supp. 733 (E.D.N.C. 1996). The *Santitoro* action arose out of alleged medical malpractice and misconduct during the delivery of medical services by the defendant Evans. In each case, plaintiffs asserted various tort claims against both Evans and the HMO employing him. The HMO's argued Plaintiff's claims to have been preempted by ERISA. The district court disagreed. Claims brought by plaintiffs included both vicarious and direct liability allegations. The district court held plaintiffs' claims do not fall within the purview of ERISA stating:

"Plaintiffs' claims relate to the quality, rather than the quantity, of benefits plaintiffs received under the plan. Plaintiffs do not assert claims against the defendant HMO's for wrongful denial or administration of benefits under the plans. To the contrary, they claim damages for Evans' alleged medical malpractice and other malfeasance related to the provision of those benefits. Thus, plaintiffs seek to hold defendants liable for breaches of duties related to medical care imposed by state tort law, rather than breaches of the duties contractually imposed by the plans.", at 735.

As noted in *Prihoda*, the issue of the "complete preemption" exception of *Metropolitan Life* to the "well-pleaded complaint rule" to state law claims predicated upon theories of medical negligence has been considered by the Third, Seventh and Tenth Circuits. In *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, (3rd Cir.1995), the United States Court of Appeals for the Third Circuit analyzed the plaintiff's state law claims of both direct and vicarious liability in light of Dukes claims against the HMO. While the district court found plaintiffs' state law claims against *U.S.*

*Healthcare* fell within the scope of § 502(a)(1)(B), the Third Circuit disagreed finding those claims were not to recover benefits under the terms of the plan or to enforce rights thereunder. As the court astutely recognized:

"... [e]ven when construed as *U.S. Healthcare* suggests, [the plaintiffs' claims] merely attack the quality of the benefits they received: the plaintiffs here simply do not claim that the plans erroneously withheld benefits due. Nor do they ask the state court's to enforce their rights under the terms of their respective plans or to clarify their rights to future benefits. As a result, the plaintiffs' claims fall outside the scope of § 502(a)(1)(B) and these cases must be remanded to the state courts from which they were removed." at 352.

Utilizing similar reasoning, the Seventh Circuit found the complete preemption exception to be inapplicable to medical malpractice claims filed against an HMO under theories of vicarious liability. In *Rice v. Panchal,* 65 F.3d 637 (7th Cir.1995), Rice filed a medical malpractice complaint in the circuit court for Cook County, Illinois against Panchal, a designated care provider designated by the plan administrator, Prudential. Rice alleged Prudential was liable for the medical malpractice under the state law theory of *respondent superior.* Prudential removed the complaint to federal court under the doctrine of complete preemption and later the district court dismissed Rice's complaint against Prudential on the grounds that he had no remedy under ERISA. Rice appealed and the Seventh Circuit held his state-law claim was not subject to complete ERISA. Holding fast to the well-pleaded complaint rule, the Seventh Circuit found Rice's claim to be one for medical malpractice that did not rest upon the terms of the ERISA plan in question. As the question of whether Rice's claim that Prudential was liable for the medical malpractice of the treating physician would not require construction of the ERISA plan, the court found his claim was not properly recharacterized as a suit to enforce his rights under a plan within the scope of ERISA. The district court was therefore reversed and the case was remanded to state court.

A similar conclusion was reached in the Tenth Circuit in *Pacificare of Oklahoma, Inc., v. Burrage,* 59 F.3d, 151 (10th Cir.1995). In *Pacificare,* a medical malpractice claim was originally filed in state court. Pacificare of Oklahoma, Inc., an HMO, and one of the named defendants, removed the action to federal court arguing the state-law claims to be preempted by ERISA. The district court concluded ERISA preempted only one of plaintiff's three claims, dismissed the preempted claim and remanded the other two claims to state court. Pacificare sought a writ of mandamus directing the district court judge to rescind his order remanding the two claims to state court and to decide those claims were preempted by ERISA. Since the district court did not remand under 28 U.S.C. § 1447(c), (d), the district court's order was reviewable. Having reviewed the issue, the Tenth Circuit found the plaintiff's state-court medical malpractice claim against the HMO predicated upon the theory of *respondent superior* did not "relate to" an employee benefit plan and, therefore, the petition for writ of mandamus was denied.

Mrs. Dykema's well-pleaded complaint alleges various state-law claims of direct and vicarious liability as to Companion. There is no real contention her state-law claims implicate any of ERISA's civil enforcement provisions. Mrs. Dykema's complaint attacks the quality of services rendered by Companion. She does not claim the plan erroneously withheld benefits due. She does not ask the state court to enforce her rights under the terms of a plan or to clarify her rights or those of others to future benefits. Very simply stated, all of Plaintiff's claims fall outside the scope of ERISA. A claim about the quality of a benefit received is not a claim to recover benefits due. Mrs. Dykema's suit rests solely on a failure to provide services of acceptable quality. Therefore, the complete preemption doctrine of *Metropolitan Life* is inapplicable.

Finding Plaintiff's claim is not preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq., Plaintiff's claims are not removable under 28 U.S.C. § 1441. Plaintiff's motion to

remand her case is therefore Granted pursuant to 28 U.S.C. § 1447(c), (d) and the case is hereby remanded to the Circuit Court for Anderson County, South Carolina this 28 day of March, 1997.